IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

MARSHALL J. JUSTICE
    *Petitioner-Plaintiff*,

v.                                           Case No.  2:17-cv-03681

ALEXANDER ACOSTA, and the
MINE SAFETY AND HEALTH
ADMINISTRATION
    *Respondents-Defendants*.

## COMPLAINT AND PETITION FOR A WRIT OF MANDAMUS

       This is an action seeking a writ of mandamus, and other appropriate relief under the Administrative Procedure Act, to compel the U.S. Mine Safety and Health Administration ("MSHA") to act in a timely manner to fulfill its mandatory, nondiscretionary duties under Section 105(c) of the Federal Mine Safety and Health Act of 1977, as amended, 30 U.S.C. 801 et seq.  Section 105(c), 30 U.S.C. Sec. 815(c), is the whistleblower protection section of the Mine Act, which provides a private right of action when a miner or representative of miners is interfered with or discriminated against in connection with exercising his or her protected safety-related rights under the Mine Act.  Section 105(c) requires MSHA to "notify, in writing, the miner . . . of [the Secretary of Labor's] determination whether a violation [of the Mine Act's anti-discrimination provisions] has occurred," and to do so within 90 days of the receipt of a complaint of discrimination.  MSHA has failed to respond to Petitioner's complaint of interference and discrimination under Section105(c)(2) of the Mine Act in the statutorily established time frame. MSHA's improper withholding of a final decision on Petitioner's complaint bars him from other statutorily available rights and remedies, most notably a private right of action established in Section105(c)(3) of the same Act.

Pursuant to the Administrative Procedure Act, 5 U.S.C. Secs. 701-706, the Petitioner-Plaintiff seeks to compel agency action unlawfully and improperly withheld. Petitioner respectfully requests this court compel MSHA to issue notice of a final determination on Petitioner's Section105(c)(2) complaint, as required by Section 105(c)(3) of the Mine Act, 30 U.S.C. 815(c)(3).

## Jurisdiction and Venue

1. This court has jurisdiction over this matter pursuant to 28 U.S.C. Sec. 1361 and 5 U.S.C. Secs. 701-706.
2. Venue for this matter is proper under 28 U.S.C. Sec. 1391.

## Parties

3. Petitioner Marshall Justice is a lifelong coal miner, having worked in coal mines for over thirty years. Petitioner resides in Boone County, West Virginia and has resided there at all times relevant to this complaint.
4. Respondent Alexander Acosta is the Secretary of Labor and oversees the U.S. Department of Labor, including the Mine Safety and Health Administration (MSHA). The Department of Labor's principal place of business is 200 Constitution Ave. NW, Washington DC 20210.
5. Respondent MSHA is a federal agency within the U.S. Department of Labor, created by the Mine Act, 30 U.S.C Sec. 801 *et seq.*, to enforce the provisions of that Act and to promulgate regulations to supplement it. MSHA's principal place of business is located at 201 12th Street South, Suite 401, Arlington, VA 22202-5450. The Mine Act's express purpose is to protect miners' health, safety, and rights through MSHA. *See* 30 U.S.C.

801(g) (stating that the primary purposes of the Mine Act are to direct the promulgation and enforcement of mandatory health or safety standards).

## Facts

6. Petitioner Marshall Justice is a fifty-three year old, Boone County resident who has worked in coal mines for over thirty years.

7. In January of 2014, Mr. Justice began working at the Gateway Eagle Mine in Boone County, West Virginia, which is currently operated by Rockwell Mining, LLC ("Rockwell").

8. On June 22nd, 2015, miners at the Gateway Eagle Mine in Boone County, WV selected Mr. Justice to serve as a miners' representative under the federal Mine Act. In that role, Mr. Justice helped to protect miners by communicating with management concerning perceived health and safety risks, speaking with investigators and inspectors, reviewing and commenting on ventilation plans and other mine safety plans developed by the operator, filing complaints about safety hazards, health risks, and interference with workers' rights under the Mine Act, and informing his fellow miners of their rights under the Mine Act.

9. On multiple occasions during 2015 and 2016, Rockwell unfairly and unlawfully interfered with Mr. Justice's rights as a miners' representative under the Mine Act, including by failing to provide Mr. Justice with timely copies of proposed ventilation plan changes and depriving Mr. Justice of his opportunity to exercise his right to accompany mine inspectors during inspections at the Gateway Eagle Mine, and further asserts that his work as a miners' representative has led Rockwell to unfairly and unlawfully discriminate against him in violation of Sec. 105(c) of the Mine Act.

10. Under Section105(c)(2) of the Mine Act, a miner who believes he has suffered unlawful interference or discrimination may file a complaint with the Secretary of Labor in order to have administrative or judicial remedies available to him.

11. Under Section105(c)(3) of the Mine Act, the Secretary of Labor or his designee is required to make a determination as to whether a violation has occurred within ninety days of their receipt of such a complaint.

12. On July 20th, 2016, Mr. Justice filed a Section105(c)(2) complaint with the Secretary of Labor alleging that Rockwell unlawfully interfered with his exercise of his rights as a miners' representative and discriminated against him after he made safety complaints and spoke to an inspector.

13. Therefore, pursuant to Section 105(c)(3) of the Mine Act, MSHA was required to make a determination regarding Justice's complaint on or before October 18, 2016.

14. As of this date, 365 days have elapsed since Mr. Justice filed his complaint with MSHA, and MSHA is 275 days late in issuing its final determination under Section 105(c)(3).

15. On April 5, 2017, MSHA contacted Mr. Justice by email to his counsel, explaining the status of MSHA's investigation and providing a letter from Rockwell Mining that purported to resolve several---but by no means all---of the matters that Mr. Justice had raised in his complaint.  In that April 5 email from MSHA, the agency appeared to be pursuing a mediated outcome rather than making any attempt to produce the mandatory, nondiscretionary determination as to whether a violation had occurred, making statements such as:

> It appears that Rockwell is trying to be cooperative and is agreeable to recognizing Mr. Justice as a duly designated miners' representative and respecting his rights as such. . . .  There [are] a few outstanding issues that we need to address with the company in order to try to avoid any potential future

> disagreements. Of course, some unforeseen issue may arise that we simply cannot anticipate and we will have to deal with such situations if and when they arise. However, to the extent that we are able to anticipate any such issues, it would be best to try and address those issues sooner rather than later.
>
> . . .
>
> There are some outstanding issues, some of which are discussed in the last paragraph of Mr. Ellis' letter that will need to be addressed. [. . . and stating in reference to such issues that, w]hile MSHA does not agree with this position, that is an issue that would likely be raised should this matter need to proceed to litigation.

16. The April 5 letter clearly indicated that MSHA was pursuing a mediated outcome and was refusing to adhere to its mandatory, nondiscretionary duty to issue a determination as to whether a violation occurred within 90 days of receiving Mr. Justice's complaint, insofar as they were continuing to investigate his complaint and to seek further information before deciding whether or not to issue a written determination as required by Section 105(c)(3).

   **I.   Respondents have a Clear Legal Duty under the Mine Act**

17. MSHA is responsible for enforcing the terms of the Mine Act and promulgating regulations to facilitate that enforcement.

18. Under Section 105(c)(3), the Secretary of Labor ("the Secretary"), through MSHA, has a mandatory, compulsory duty to consider and respond to Section 105(c)(2) complaints. While the Secretary certainly has discretion to determine whether or not a violation has occurred, the Act does not confer any discretion as to whether to notify complainants regarding the agency's determination, within 90 days of receiving a complaint, whether or not a violation has occurred.

19. Section105(c)(3) declares that "Within 90 days of the receipt of a complaint… the Secretary shall notify, in writing, the miner… of his determination whether a violation occurred." 30 U.S.C. 815(c)(3).

20. The Fourth Circuit has regularly and repeatedly held that the plain meaning of the word "shall" in a statute denotes a mandatory, non-discretionary duty, unless such statute contains an explicit statement to the contrary. *Genetics & IVF Inst. v. Kappos*, 801 F. Supp. 2d 497, 504 (E.D. Va. 2011) *citing Merck & Co., Inc. v. Hi-Tech Pharmacal Co., Inc.*, 482 F.3d 1317, 1322 (Fed. Cir. 2007); *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002); *Holland v. Pardee Coal Co.*, 269 F.3d 424, 431 (4th Cir. 2001).

21. Specifically as to the federal Mine Act, courts have determined that the use of the word "shall" in the Mine Act creates mandatory, non-discretionary obligations for MSHA. *Chaney Creek Coal Corp. v. Fed. Mine Safety & Health Review Comm'n*, 275 U.S. App. D.C. 306, 866 F.2d 1424 (1989). This holding specifically addressed the meaning of the word "shall" in Section 105 of the Act---the same section at issue in this case.

22. Without explicit language to the contrary, the Mine Act's deadlines are mandatory. *See In re UMW Int'l Union*, 190 F.3d 545, 560, 338 U.S. App. D.C. 56, 61 (1999) ("Nor are we persuaded by MSHA's broader claim that the Mine Act's deadlines are merely hortatory. Nothing about the language of those deadlines suggests they are anything other than mandatory.").

23. No language in the Mine Act explicitly or implicitly reserves discretion with respect to the ninety-day deadline for making a determination as to Section105(c)(2) complaints. *See id.*, 190 F.3d at 560.

24. Accordingly, under any interpretation of Section 105(c)(2)---whether that interpretation be based on the plain language of the statute, interpretations of the language of the Mine Act specifically, or prior Fourth Circuit precedent---it is plain that the ninety-day deadline in Section 105(c)(3) is a mandatory, non-discretionary deadline that MSHA has a clear legal duty to meet.

25. While, arguably, certain delays may occasionally be caused by unusual or unforeseen circumstances affecting MSHA's investigation, what occurred in this case is different. What occurred in this case is that MSHA decided that, instead of complying with the ninety-day deadline, the agency was going to pursue a "pre-determination mediation" approach in which the Solicitor of Labor essentially mediated Mr. Justice's complaint, while delaying for nearly nine months or more the issuance of a notice of the Secretary's determination whether a violation had occurred. By not issuing within the mandatory, non-discretionary ninety-day timeframe, Respondents violated their clear statutory duty and improperly and capriciously withheld agency action.

 II. **<u>Petitioner has Clear Legal Rights under the Mine Act and the Administrative Procedure Act</u>**

26. The Mine Act's express purpose is to protect miners. In that aim, the Act creates a regulatory scheme to offer protection to aggrieved miners and to ensure protection of their health and safety, and their rights under the Mine Act to appoint miners' representatives to provide mutual aid and protection through participating in the Mine Act enforcement system.

27. The complaint process codified in Section 105(c) of the Act is an integral part of the Mine Act's regulatory scheme, which prioritizes the direct involvement of miners

themselves in the safety and health enforcement process by providing a private right of action in cases where MSHA chooses not to bring enforcement action.

28. The plain language of Section 105(c)(3) establishes the right of an aggrieved miner to file a complaint with the Secretary and to receive a determination as to the merits of that complaint within ninety days. The language of the Act establishes this process as an affirmative right available to all aggrieved miners.

29. By failing to reach a final determination within the statutorily required ninety-day period, Respondents deprived Mr. Justice, and the miners whom he represents, of their affirmative statutory right to use MSHA's regulatory system to protect their health and safety rights under the Mine Act.

30. Further, under Section 105(c)(3), a miner whose complaint is denied by the Secretary has a private right of action to have a hearing in front of the Commission.

31. By failing to make a final determination as to Mr. Justice's complaint, Respondents have extinguished the private right of action contained within Section 105(c)(3)---an *ultra vires* action by the Respondents that should be corrected by the issuance of the writ of mandamus sought by the Petitioner here.

32. When an agency fails to meet a mandatory, non-discretionary statutory deadline, that failure should be interpreted as agency inaction improperly withheld. *South Carolina v. United States*, Civil Action No. 1:16-cv-00391-JMC (D.S.C. Mar. 20, 2017). Respondents have failed to meet the statutory ninety-day deadline, which constitutes the improper withholding of agency action.

33. Respondents have violated Mr. Justice's clear legal right to have a final determination from the Secretary within ninety days and improperly and illegally extinguished the private right of action established in Section105(c)(3).

### III.     Petitioner has Exhausted all Administrative Remedies

34. The Mine Act does not expressly offer any administrative remedies for miners on whose complaints the Secretary has failed to respond or to make a determination within the ninety-day statutory period.

35. The Mine Act does, however, provide guidance as to what occurs when the Secretary verifies a complaint and what occurs when the Secretary denies a complaint. The lack of administrative remedies when the Secretary declines to offer a final determination on a complaint is further evidence that the ninety-day deadline is non-discretionary, and that Respondents' failure to comply with that requirement was not anticipated by Congress in drafting and passing the Min e Act.

36. Further, no regulations exist that provide administrative remedies when the Secretary fails to respond to a complaint within the required ninety-day period.

37. The only administrative processes that exist for a claim to be heard are through the determination of the Secretary and through a hearing in front of the Commission, available only after the Secretary denies his complaint.

38. According to Procedural Rules of the Federal Mine Safety and Health Review Commission, an aggrieved miner is not permitted to have his complaint heard in front of the Commission if the Secretary has yet to issue a final determination on the miner's complaint.  *See* 29 C.F.R. 2700.41(b).

39. Without access to a determination by the Secretary or a hearing in front of the Commission, Mr. Justice has exhausted all available administrative remedies.

40. Further, Mr. Justice has made attempts, by and through his attorney, to request that Respondents offer a final determination on his complaint without the resort to litigation. On March 27, 2017, Mr. Justice, by counsel, stated in writing to MSHA:

> While we appreciate your sending the [pre-determination mediation] letter to try to expedite a resolution, we also want to request that MSHA fulfill its mandatory nondiscretionary duty under 30 USC 815(c) to notify the complainant in writing of [the agency's] determination as to whether a violation has occurred. This complaint was filed on July 20, 2016, and so the 90-day mandatory notification period has long since elapsed in this case. The Secretary's failure to issue the mandatory finding at all, even after the elapse of such a lengthy period, would simply be more than we could accept. I hope that you will take a look at this situation and advise the agency to issue the mandatory determination whether a violation has occurred under Sec. 105(c), so that we can all be spared the need to pursue additional process.

41. Nevertheless, rather than issuing a notice of determination, the Respondents continued attempting to mediate an outcome and refusing to make a determination that would allow for Mr. Justice to pursue his private right of action.

### IV. Petitioner's Claim is Capable of Repetition, Yet Evading Review

42. As evidenced above, Mr. Justice has exhausted all administrative remedies and has only resorted to litigation because of the lengthy and ongoing failure of Respondents to comply with their duties under the Mine Act.

43. Respondents regularly and routinely have failed to comply with their legal duties under the Mine Act when presented with Section 105(c)(2) complaints.

44. Since 2013 Mr. Justice has filed four Section 105(c)(2) complaints. All of these complaints were filed to protect the rights and safety of Mr. Justice and his fellow miners. The most recent of these complaints, and the one at issue in the matter, was filed in his capacity as a miners' representative.

45. Mr. Justice's first Section 105(c)(2) complaint was filed on November 4, 2013 and he received a final determination from the Secretary on December 18, 2013.

46. Mr. Justice was able to and did pursue his private right of action under Sec. 105(c)(3) to pursue his complaint, which was settled out of court on October 10, 2014.

47. Mr. Justice's second Section 105(c)(2) complaint was filed on May 21, 2015 and he received a final determination from the Secretary on July 9, 2015. Mr. Justice also pursued his private right of action in connection with this second complaint.

48. Mr. Justice's third Section105(c)(2) complaint is the one at issue in this case. It was filed on July 20, 2017 and he has yet to receive a final determination nearly twelve months later.

49. While MSHA timely responded to Mr. Justice's prior complaints, the agency clearly made a distinct decision to take a different approach in the third complaint---opting for an *ultra vires* "pre-determination mediation" approach that is not authorized by statute and that effectively has extinguished Mr. Justice's right to seek a timely remedy on his own terms.

50. Mr. Justice's inability to seek a formal hearing and a binding order outlining his rights to be free from interference has led to continued interference and discrimination from his employer, and the maintenance of dangerous and potentially deadly work conditions that affect Mr. Justice as well as his fellow miners.

51. Mr. Justice continues to be denied the opportunity to accompany MSHA inspectors at the Gateway Eagle Mine, which is an affirmative right under Sec. 103(f) of the Mine Act, 30 U.S.C. 813(f).

52. On information and belief, Respondents' failure to comply with their statutory duties was an intentional decision in flagrant contravention of their mandatory duty.

53. The Gateway Eagle Mine, where Mr. Justice serves as a miners' representative, has received over 110 citations or orders from MSHA during calendar year 2017.

54. Tragically, a miner was killed at the Gateway Eagle Mine during a period in 2017 when Mr. Justice had been unable to participate in MSHA inspections due to the mine operator's ongoing interference with Mr. Justice's walkaround rights.

55. Subsequent to the filing of Mr. Justice's Sec. 105(c)(2) complaint in 2016---and up to the present time---the Respondent has continued to make productions of information to Mr. Justice that are untimely under the federal regulations.

56. As a result of his role as a miners' representative, there is a demonstrated probability that Mr. Justice will continue to file Section105(c)(2) complaints with Respondents. This is evidenced through his numerous filings in the past, and his demonstrated commitment as an outspoken advocate of workers' rights within coal mines.

57. Respondents' flagrant determination to simply discard their statutory duty and to fabricate an alternate "pre-determination mediation" process strongly suggests that the Petitioner may encounter this same illegal infringement of his clear rights on successive disputes about his rights as a miners' representative if this Court does not issue a writ of mandamus to compel MSHA to adhere to its mandatory duty.

58. If Respondents were to comply with their clear legal duty, any complaint to the Secretary would be responded to within ninety days, and---if the Secretary declined to prosecute the case---the complaining miner would have the right to go forward with his private right of action under Sec. 105(c)(3) in a timely manner.

59. Nowhere in the Mine Act or its legislative history is it contemplated that a miner would be required to file a petition for writ of mandamus in order to have his complaint responded to in the timeframe mandated by the statute.

60. Because of the short timeline of the Section 105(c)(3) process, Respondents could, and likely will, resolve complaints when litigation is commenced but continue their improper and illegal behavior otherwise.

61. For this reason, Mr. Justice has a legal interest in the resolution of this petition, even beyond this current outstanding complaint.

### Count I - MANDAMUS RELIEF
### 28 U.S.C. 1361

62. Petitioner incorporates by reference the foregoing paragraphs.

63. Respondent Acosta is an officer of the United States, acting within his official capacity, who owes the Petitioner a plain and clear legal duty to comply with the mandatory deadlines imposed upon him by the Mine Act.

64. This Court has jurisdiction to issue writs of mandamus "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. 1361.

65. Plaintiff has a clear legal right to have his complaint determined by Respondent Acosta as required by law, to have access to the private right of action established by the Mine Act, and to be free from agency action improperly, arbitrarily, and capriciously withheld.

66. There is no other adequate remedy available to Petitioner to require the Secretary to issue a notice of determination.

67. Petitioner has a clear legal right to relief in mandamus.

## Count II – Administrative Procedure Act
## 5 U.S.C. 551

68. The Petitioner-Plaintiff incorporates by reference the foregoing paragraphs.

69. The Respondents' conduct set forth above was arbitrary and capricious, constituted an abuse of discretion, and was otherwise not in accordance with law.

70. This Court has authority to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), and to set aside an agency decision "without observance of procedure required by law," 5 U.S.C. § 706(2)(D). Mr. Justice is therefore entitled to the relief requested below.

## PRAYER FOR RELIEF

WHEREFORE, the Petitioner asks this Court to:

I. Issue an order and/or a Writ of Mandamus compelling the Respondents to make a determination immediately regarding the Petitioner's Section 105(c)(2) complaint without further inquiry or demands for production of information or responses from Mr. Justice;

II. In the order and/or Writ of Mandamus, direct the Respondents to comply with their clear legal duty to issue notices of the Secretary's determination regarding Section105(c)(2) complaints in a timely manner, and not to fabricate a "pre-determination mediation" process that causes the notice of determination to be delayed beyond the mandatory deadline in the statute;

III. Award Petitioner's attorney fees and costs; and

IV. Award all other relief to which the Petitioner may be entitled.

**MARSHALL J. JUSTICE,**
**By Counsel,**


\_\_/s/ Samuel B. Petsonk_____
Samuel B. Petsonk, Esq. (WVSB 12418)
Mountain State Justice, Inc.
1031 Quarrier St., Ste. 200
Charleston, WV 25301
sam@msjlaw.org
*Counsel for Petitioner*


\_\_\_/s/ Tony Oppegard_____
Tony Oppegard, Esq.  (KYSB 52768)
PO Box 22446
Lexington, KY 40522
tonyoppegard@gmail.com
*Counsel for Petitioner*
*Application for pro hac vice admission pending*