```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF WEST VIRGINIA
                             AT CHARLESTON
```

MARSHALL J. JUSTICE,

       Petitioner-Plaintiff,

v.                            Civil Action No. 2:17-cv-03681

ALEXANDER ACOSTA, and
THE MINE SAFETY AND HEALTH
ADMINISTRATION,

       Respondents-Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court is the motion to dismiss filed by defendants Alexander Acosta and The Mine Safety and Health Administration ("MSHA") on October 19, 2017.

### I. Factual and Procedural Background

On July 20, 2017, the plaintiff, Marshall J. Justice, a resident of Boone County, West Virginia, instituted this action against Alexander Acosta and MHSA seeking a writ of mandamus and other appropriate relief under the Administrative Procedure Act ("APA") with respect to a Section 105(c) complaint filed by him and not properly responded to by the defendants within the statutorily required timeframe of 90 days. Section 105(c) of the Federal Mine Safety and Health Act of 1977, as

amended, 30 U.S.C. 801, et seq. ("Mine Act") provides a private right of action to miners or miner representatives whose statutory rights have been interfered with, or who have been allegedly discriminated against because they engage in activities protected under the Mine Act.  30 U.S.C. § 815(c)(1).

Mr. Justice has worked in coal mining for over thirty years.  Id. at ¶ 6.  In January 2014, he began working at the Gateway Eagle Mine in Boone County, West Virginia.  Id. at ¶ 7.  On June 22, 2015, miners selected Mr. Justice to serve as a miners' representative, as the term is used in the Mine Act.  Id. at ¶ 8.  As representative, he was responsible for communicating with management concerning perceived health and safety risks, speaking with investigators and inspectors, reviewing and commenting on mine safety plans developed by the operator, filing complaints about safety hazards, health risks, and interference with workers' rights under the Mine Act, and for informing miners of their rights under the Act.  Compl. ¶ 8.

On July 20, 2017, Mr. Justice brought this action seeking: (1) a writ of mandamus to compel the defendants to make an immediate determination regarding his Section 105(c) complaint filed on July 20, 2016; (2) an order directing the defendants to comply with their duty under the Mine Act to issue final determinations in response to a Section 105(c) complaint

2

within 90 days; (3) any other relief available to him under the APA; and (4) attorneys fees. Compl. 1. Mr. Justice based his Section 105(c) complaint on instances in 2015 and 2016 in which Mr. Justice alleged that Rockwell violated his rights as a miner and as a miners' representative. In his capacity as a miner, Mr. Justice complained that Rockwell allegedly instructed him to operate a caged scoop for long-distance supply haulage after he told Rockwell that the operation was dangerous. Mem. in Supp. of Mot. to Dismiss 3, Attachment A. In his capacity as miners' representative, Mr. Justice alleged that Rockwell failed to provide him with timely copies of proposed ventilation plan changes and deprived him of his right to accompany mine inspectors during inspections at Gateway Eagle Mine, thereby discriminating against him in violation of Section 105(c) of the Mine Act. Compl. ¶ 9. <u>See also</u> Def.'s Mot. Dismiss ¶ 2.

Pursuant to Section 105(c)(2) of the Mine Act, Mr. Justice filed his complaint with the Secretary of Labor ("Secretary") on July 20, 2016. Under Section 105(c)(3) of the Mine Act, the Secretary was required to make a determination on or before October 18, 2016 as to whether a violation had occurred – within 90 days after Mr. Justice filed his complaint. Compl. ¶ 13. He has filed four Section 105(c) complaints between 2013 and 2016. Compl. ¶ 44. The complaint at issue

here is the only complaint of the four that MSHA failed to respond to in a timely manner. Compl. ¶ 49. Further, this complaint was the only complaint that Mr. Justice filed in his capacity as a miners' representative. Compl. ¶ 44.

After 365 days had elapsed since he filed the 105(c) complaint, Mr. Justice brought this action because the Secretary had not rendered a final decision. Compl. 1. On April 5, 2017, MSHA sent an email to Mr. Justice's counsel that explained the status of MSHA's investigation. Compl. ¶ 15. According to Mr. Justice, the agency "appeared to be pursuing a mediated outcome rather than making any attempt to produce the mandatory, nondiscretionary determination as to whether a violation had occurred." Id. The email stated, among other things, that:

> It appears that Rockwell is trying to be cooperative and is agreeable to recognizing Mr. Justice as a duly designated miners' representative and respecting his rights as such . . . There [are] a few outstanding issues that we need to address with the company in order to try to avoid any potential future disagreements. Of course, some unforeseen issue may arise that we simply cannot anticipate and we will have to deal with such situations if and when they arise. However, to the extent that we are able to anticipate any such issues, it would be best to try and address those issues sooner rather than later. Id.

MSHA further provided the plaintiff with a letter from Rockwell Mining in the email that plaintiff alleges "purported to resolve several – but by no means all - of the matters that

Mr. Justice had raised in his complaint." Id. Regarding this, the email stated that there were "some outstanding issues, some of which are discussed in the last paragraph of [the] letter that will need to be addressed," and while "MSHA does not agree with this position, that is an issue that would likely be raised should this matter need to proceed to litigation." Id. Mr. Justice admits that, while "certain delays may occasionally be caused by unusual or unforeseen circumstances affecting MSHA's investigation," the above communications evidence that what occurred was instead MSHA's attempt to "pursue a 'pre-determination mediation' approach" in which the Solicitor of Labor essentially "mediated Mr. Justice's complaint, while delaying for nearly nine months or more the issuance of a notice." Compl. ¶ 15. Rather than complying with the deadline, MSHA personnel "violated their clear statutory duty" and allegedly "improperly and capriciously withheld agency action." Id.

On September 14, 2017, MSHA notified Mr. Justice that the agency had determined that a Section 105(c) violation occurred with respect to the allegations made in his representative capacity: that Rockwell failed to provide him with timely copies of proposed ventilation plan changes and deprived him of his right to accompany mine inspectors during

inspections at Gateway Eagle Mine, thereby discriminating against him in violation of Section 105(c) of the Mine Act. Id. MSHA indicated that the U.S. Department of Labor's Office of the Solicitor would be filing a complaint to remedy the interference with his statutory rights. Id. Subsequently, on October 3, 2017, MSHA filed a complaint with the Federal Mine Safety and Health Review Commission ("FMSHRC"), alleging that Rockwell had interfered with Mr. Justice's statutory rights. Id. In concurrence with this filing, the Solicitor's Office notified Mr. Justice that the Secretary had determined that Mr. Justice's allegations regarding the operation of the caged scoop did not constitute a violation of Section 105(c). Mem. in Supp. of Mot. to Dismiss 4, Attachment E.

On October 19, 2017, defendants filed a motion to dismiss this action, arguing that because the Secretary conducted an investigation and rendered a finding in response to Mr. Justice's 105(c) complaint, he received the relief to which he is entitled, and there exists no actual controversy. Def.'s Mot. to Dismiss ¶ 3. Rockwell asserts that Mr. Justice's claims are moot. Id.

On November 3, 2017, Mr. Justice filed a response in opposition to the defendants' motion to dismiss. He contends in his response that because the defendants' conduct is capable of

6

repetition yet evading review, and the defendants voluntarily abated their alleged misconduct during litigation, the controversy is still alive.

## II. Governing Standard

Federal district courts are courts of limited subject matter jurisdiction, possessing "only the jurisdiction authorized to them by the United States Constitution and by federal statute." United States ex. rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2008). "[T]here is no presumption that the court has jurisdiction." Pinkley, Inc. v. City of Frederick, 191 F.3d 394, 399 (4th Cir. 1999) (citing Lehigh Mining & Mfg. Co. v. Kelly, 160 U.S. 327, 327 (1895)). When the existence of subject matter jurisdiction is challenged under Rule 12(b)(1), "[t]he plaintiff has the burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); see also Richmond, Fredericksburg, & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). If subject matter jurisdiction is lacking, the claim must be dismissed. See Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006).

Subject matter jurisdiction may be attacked by a defendant with either a facial or a factual challenge. Kerns v.

*United States*, 585 F.3d 188, 192 (4th Cir. 2009). In a facial challenge, a defendant is asserting that the allegations contained in the complaint fail to sufficiently establish the existence of subject matter jurisdiction. *Id.* In a facial attack, a plaintiff is "afforded the same procedural protection as she would receive under a Rule 12(b)(6) consideration," so that "facts alleged in the complaint are taken as true," and the defendant's motion "must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.* In a factual challenge, a defendant may argue "that the jurisdictional allegations of the complaint [are] not true." *Id.* This permits a trial court to consider extrinsic evidence or hold an evidentiary hearing to "determine if there are facts to support the jurisdictional allegations." *Id.*

At the motion to dismiss stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561. The court may accept as true allegations that are supported by adequate "'factual matter' to render them 'plausible on [their] face.'" *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (citing *Ashcroft*, 556 U.S. 662, 678 (2009)). "The same presumption of

8

truth" does not apply to "conclusory statements and legal conclusions" contained in the complaint.  Id.  As these are facial and not factual challenges to Mr. Justice's standing, the court will accept all allegations in his complaint as true and determine whether he has sufficiently established a basis for subject matter jurisdiction.  See Kerns, 585 F.3d at 192.

### III. Discussion

At issue in this case is whether Mr. Justice's lawsuit is moot.  Specifically, whether Mr. Justice's alleged harm - the Secretary's failure to render a final determination in response to his 105(c) complaint in a timely manner, as required by the Mine Act - is capable of repetition, yet evading review.  And further, whether the Secretary's actions, which took place after Mr. Justice filed this lawsuit, falls within the voluntary cessation exception to the mootness doctrine.  Standing is generally addressed at the motion to dismiss stage under Fed. R. Civ. P. 12(b)(1) because "Article III gives federal courts jurisdiction only over cases and controversies and standing is an integral component of the case or controversy requirement." CGM, LLC v. BellSouth Telecommunications, Inc., 664 F.3d 46, 52 (4th Cir. 2011) (internal citations and quotations omitted).

A case that is deemed "moot" lacks standing because in such cases, "the issues presented are no longer 'live' or the

parties lack a legally cognizable interest in the outcome." Murphy v. Hunt, 455 U.S. 478, 481 (1982). A case becomes moot, and therefore no longer falls within the court's subject matter jurisdiction, when it is "impossible for a court to grant any effectual relief whatever to a prevailing party." Chafin v. Chafin, 568 U.S. 165, 172 (2013)(quoting Knox v. Service Employees, 567 U.S. 298, 307 (2012)).

There are two exceptions to the mootness doctrine: (1) when the harm is capable of repetition yet evading review and (2) where the defendant voluntarily ceased the alleged harm once litigation commenced. With respect to the first exception, it is well-settled that "[t]he capable-of-repetition doctrine applies only in exceptional situations." L.A. v. Lyons, 461 U.S. 95, 109 (1983). It should be applied only "where the following two circumstances are simultaneously present: (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." Lewis v. Continental Bank Corp., 494 U.S. 472, 481 (1990) (quoting Murphy v. Hunt, 455 U.S. 478, 482 (1982) (per curiam)).

Regarding the second exception, "the voluntary cessation of challenged conduct does not ordinarily render a

case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." Knox v. Service Emps. Int'l Union, 567 U.S. 298, 307 (2012). That is, the defendant may be "free to return to his old ways." United States v. W.T. Grant Co., 345 U.S. 629, 632 (1953). "The case may nevertheless be moot if the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated." Id. at 633. "The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 189 (2000) (quoting United States v. Concentrated Phosphate Export Ass'n, 393 U.S 199, 203 (1968)).

Mr. Justice initially sought MSHA to render an immediate determination on his Section 105(c) complaint. He further seeks to compel MSHA to fulfill its duties under the Mine Act in a timely manner. These claims are moot. As the plaintiff points out, the defendants partook in a "swift action to issue a decision . . . within less than two months following the commencement of this lawsuit." Pl.'s Resp. to Mot. to Dismiss 4. By issuing a final determination with respect to Mr. Justice's Section 105(c) complaint, the defendants have both

issued an immediate determination and complied with their legal duty to issue decisions within a timely manner. Unless the plaintiff's claims fall within one of the exceptions to the mootness doctrine, this case must be dismissed.

Plaintiff correctly points to the filing of this lawsuit and subsequent action by the Secretary, which resulted in a final determination and the issuing of a complaint with the FMSHRC, in support of his assertion that this lawsuit is capable of repetition, yet evading review. Plaintiff, however, must further allege sufficient facts to show there is a "reasonable expectation" or "demonstrated probability" "that the same controversy will recur involving the same complaining party" for the exception to apply. Murphy v. Hunt, 455 U.S. 478, 482 (1982). In light of the facts alleged in his complaint, the court is not persuaded that MSHA's failure to issue a final determination on Mr. Justice's Section 105(c) complaint within 90 days will recur under the level of probability necessary to fall within this narrow exception.

The facts articulated to support such alleged probability includes MSHA's failure to render a timely determination in response to the complaint Mr. Justice filed on July 20, 2016, and MSHA's alleged use of a "mediated outcome" before MSHA issued a final decision. Compl. ¶ 15. In addition,

12

it is asserted that defendants have allegedly "continued to make productions of information to Mr. Justice that are untimely under the federal regulations." Id. ¶ 55. Mr. Justice also notes his "numerous filings in the past," and "his demonstrated commitment as an outspoken advocate of workers' rights within coal mines." Id. ¶ 56.

No matter the reason for MSHA's tardiness, a single instance of the agency's failure to adhere to its duties under Section 105(c) of the Mine Act gives this court no reason to expect that such harm will occur again. If a "mere physical or theoretical possibility was sufficient . . . virtually any matter of short duration would be reviewable." Murphy, 455 U.S. at 482. And MSHSA's timely determinations made in response to Mr. Justice's three prior complaints evidence the contrary: that MSHA will issue a determination within 90 days in response to any future complaints filed by Mr. Justice.

Finally, the continued productions of untimely information complained of by Mr. Justice still relate to the single complaint that was not responded to with a timely determination. At issue in this case is not a statute requiring that <u>all information</u> produced by MHSA pertaining to a complaint be provided to mining representatives within 90 days. Rather, it is a statute mandating a <u>final determination</u> be issued on a

13

particular complaint within 90 days. Here, Mr. Justice does not assert in his complaint or responsive motion that he filed any other Section 105(c) complaints since this litigation commenced. As "past exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects," one failure by MHSA to timely respond to a Section 105(c) complaint filed by Mr. Justice is insufficient to meet the reasonable expectation standard of the exception. Renne v. Geary, 501 U.S. 312, 321 (1991).

Ultimately, Mr. Justice merely seeks a court order barring the defendants from acting in "similar fashion" in the future, and in turn, has failed to show there is a present case or controversy. See Fleming v. Workers' Compensation Com'n, 878 F.Supp. 852, 858 (E.D. VA 1995), aff'd., 78 F.3d 578 (4th Cir. 1996) (holding that because the plaintiff "merely s[ought] a declaration that he was once injured and an order barring these defendants from acting in similar fashion in the future," plaintiff failed to show there was an actual case or controversy). Accordingly, grounds for the "capable of repetition yet evading review" exception are not shown in this instance.

Plaintiff claims that defendants voluntary ceased their challenged actions after plaintiff filed suit, and have not demonstrated with clear evidence that the "allegedly wrongful behavior could not reasonably be expected to recur." Pl.'s Resp. to Mot. to Dismiss 2; see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 190 (2000). And further, asks this court to deny the defendants' motion based on mootness "because the Defendants fail to offer any evidence to ensure that the challenged policy will not be resumed." Pl.'s Resp. to Mot. to Dismiss 2. The court does not agree.

As mentioned by both parties, courts traditionally apply the voluntary cessation exception to cases where the plaintiff's injury resulted from a wrongfully established policy or common practice. In Wall v. Wade, a Muslim state inmate filed suit under the Religious Land Use and Institutionalized Persons Act and Section 1983 alleging that prison officials interfered with his Ramadan observance by instituting a policy requiring inmates to provide "some physical indicia," such as a Quran or prayer rug, to participate in Ramadan. Wall v. Wade, 741 F.3d 492, 494 (4th Cir. 2014). Prior to 2010, the prison merely required Muslim inmates to sign up in order to participate. Id. The plaintiff could not participate because he lost all his belongings during a prison transfer. Id. at

495. After filing suit in district court, the court granted the defendants' motion for summary judgment, and Wall was transferred back to the prison. Id. at 496.

Thereafter, the defendants abandoned its policy and argued on appeal that doing so rendered Wall's claims moot. Id. The Fourth Circuit held that the defendants did not meet their burden in establishing that the Ramadan policy would not be reinstated. Id. at 497. The defendants merely offered as evidence a memorandum describing the prison's purportedly new policy that was submitted in a different case, and that memorandum failed to suggest that the prison actually barred - "or even consider[ed] itself barred - from reinstating the 2010 Ramadan policy should it so choose." Id. at 497. Rather, the "fact that at least three separate policies ha[d] been utilized . . . since 2009 indicate[d] some degree of doubt that the new policy w[ould] remain in place for long." Id.

Although MSHA issued a determination shortly after Mr. Justice filed suit, the defendants have demonstrated that there are no "old ways" to which MSHA will return if this case is dismissed. Unlike the Wall case, the defendants here do not have an established policy that encourages or requires MSHA personnel to deviate from their statutory duty to issue final determinations on Section 105(c) complaints within 90 days. The

**facts in this case do not suggest that MSHA's untimely notifications or alleged mediation tactics used as an alternative to issuing final decisions on Section 105(c) complaints are in any way habitual so as to amount to an unwritten policy or common practice. If anything, it appears more likely that MSHA encountered difficulties upon investigating the claims asserted in Mr. Justice's complaint, as evidenced by the email communications cited in the plaintiff's complaint.**

**MSHA is mandated by statutory law to issue such decisions within 90 days after a Section 105(c) complaint is filed. As the defendants point out, there is no indication, aside from its failure to respond in a timely manner to this complaint, that MSHA has an interest in delaying final decisions with respect to any future complaints filed by Mr. Justice. The defendants further draw attention to the MSHA Handbook, which indeed informs MSHA personnel of the importance of investigating 105(c) complaints. It reads:**

> **Under provisions of Section 105(c) of the Mines Act, miners, representatives of miners, and applicants for mine employment are protected from retaliation for engaging in safety or health-related activities, such as identifying hazards, asking for MSHA inspections, or refusing to engage in an unsafe act. MSHA vigorously investigates discrimination complaints to encourage miners to exercise their rights under the Mine Act. Def.'s Mot. to Dismiss, Attachment F, 2-1.**

MSHA, therefore, has a clear policy requiring personnel to investigate Section 105(c) complaints and ensure that miners' rights are protected, and it is required by statute to issue final decisions within a 90-day period.  Because the plaintiff's claims, which ask for a writ of mandamus compelling the Respondents to make an immediate determination on the then-pending Section 105(c) complaint and for the defendants to comply with their statutory duty to render timely final determinations are moot, and because those claims fail to fall within either of the exceptions, the court lacks subject matter jurisdiction to further consider this matter.  Accordingly, this case must be dismissed.

### III. Conclusion

For the reasons stated above, the court ORDERS that Alexander Acosta and The Mine Safety and Health Administration's motion to dismiss be, and hereby is, granted.

The Clerk is requested to transmit this Order and Notice to all counsel of record and to any unrepresented parties.

DATED: September 7, 2018

John T. Copenhaver, Jr.
United States District Judge